STATE of Wisconsin EX REL. Richard W. ZIERVOGEL and Maureen A. McGinnity, Plaintiffs-Appellants-Petitioners,

v.

WASHINGTON COUNTY BOARD OF ADJUSTMENT, Defendant-Respondent,

STATE of Wisconsin, Intervenor-Respondent.

Supreme Court

*No. 02–1618. Oral argument December 4, 2003.—Decided March 19, 2004.*

2004 WI 23

(Also reported in 676 N.W.2d 401.)

550

For the plaintiffs-appellants-petitioners there were briefs by *Maureen A. McGinnity* and *Foley & Lardner,* Milwaukee, and oral argument by *Maureen A. McGinnity.*

For the defendant-respondent there was a brief by *Kimberly A.* Nass, corporation counsel, Christine *E. Ohlis,* assistant corporation counsel, and oral argument by *Christine E. Ohlis.*

For the intervenor-respondent the cause was argued by *P. Philip Peterson,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *John A. Kassner* and *Murphy Desmond, S.C.,* Madison, on behalf of the Wisconsin Builders Association, and oral argument by *John A. Kassner.*

An amicus curiae brief was filed by *Daniel M. Olson,* Madison, on behalf of the League of Wisconsin Municipalities.

An amicus curiae brief was filed by *Thomas D. Larson* and *Debra P. Conrad,* Madison, on behalf of the Wisconsin Realtors Association, and oral argument by *John A. Kassner.*

An amicus curiae brief was filed by *William P. O'Connor, Tracy K. Kuczenski, Mary Beth Peranteau* and *Wheeler, VanSickle & Anderson, S.C.,* Madison, on

554

behalf of Wisconsin Association of Lakes, and oral argument by *William P. O'Connor.*

¶ 1. DIANE S. SYKES, J. We are called upon in this case to reconsider the legal standard by which zoning boards of adjustment measure "unnecessary hardship" when determining whether to grant area zoning variances.

¶ 2. The legislature has by statute vested local boards of adjustment with broad discretionary power to authorize variances where the strict enforcement of zoning regulations results in unnecessary hardship to individual property owners. "Unnecessary hardship," however, is not defined in the statute. It has fallen to courts to give meaning to the term.

¶ 3. The present need to revisit the meaning of "unnecessary hardship" is precipitated by our decisions in *State v. Kenosha County Bd. of Adjustment,* 218 Wis. 2d 396, 577 N.W.2d 813 (1998), and *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, 244 Wis. 2d 613, 628 N.W.2d 376. *Kenosha County* merged the previously distinct legal standards for unnecessary hardship in use and area variance cases that had existed since *Snyder v. Waukesha County Zoning Bd. of Adjustment,* 74 Wis. 2d 468, 247 N.W.2d 98 (1976), establishing a single, "no reasonable use of the property" standard for unnecessary hardship in all variance applications. We reconsidered *Kenosha County*'s unitary "no reasonable use" standard in *Outagamie County,* but split on whether it should be overruled (three justices), maintained but not applied to defeat the area variance in the case (two justices in concurrence), or maintained and applied to defeat the variance (two justices in dissent). *Outagamie County,* 244 Wis. 2d 613, ¶ 5.

555

¶ 4. We now conclude that the distinctions in purpose and effect of use and area zoning make the perpetuation of a single, highly-restrictive "no reasonable use of the property" standard for all variances unworkable and unfair. Use zoning regulates fundamentally how property may be used, in order to promote uniformity of land use within neighborhoods or regions. Area zoning regulates lot area, density, height, frontage, setbacks, and so forth, in order to promote uniformity of development, lot, and building size.

¶ 5. Restricting the availability of variances to those property owners who would have "no reasonable use" of their property without a variance may be justifiable in use variance cases, given the purpose of use zoning and the substantial effect of use variances on neighborhood character. But applying the same strict "no reasonable use" standard to area variance applications is unjustifiable. The "no reasonable use" standard is largely disconnected from the purpose of area zoning, fails to consider the lesser effect of area variances on neighborhood character, and operates to virtually eliminate the statutory discretion of local boards of adjustment to do justice in individual cases.

¶ 6. A forthright recognition of these differences in purpose and effect of use and area zoning and variances requires perceptibly different standards for the evaluation of use and area variance applications. Henceforward, area variance applicants need not meet the "no reasonable use of the property" standard that is applicable to use variance applications.

¶ 7. We now reaffirm the *Snyder* standard for unnecessary hardship in area variance cases: "[w]hen considering an area variance, the question of whether unnecessary hardship . . . exists is best explained as '[w]hether compliance with the strict letter of the

restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.' " *Snyder,* 74 Wis. 2d at 475 (quoting 2 Rathkopf, *The Law of Zoning & Planning* § 45–28 (3d ed. 1972)). Whether this standard is met in individual cases depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, and the effect of a variance on the neighborhood and the larger public interest. The longstanding requirements that the hardship be unique to the property and not self-created are maintained. *Snyder,* 74 Wis. 2d at 476, 479. The burden of proving unnecessary hardship remains on the property owner.

¶ 8. The variance applicants in this case were denied an area variance from a shoreland zoning setback restriction because they failed to meet *Kenosha County*'s restrictive "no reasonable use of the property" test. The denial was upheld on certiorari review and appeal. Because we now hold that *Kenosha County*'s "no reasonable use" standard does not govern area variance applications, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

¶ 9. Richard Ziervogel and Maureen McGinnity ("petitioners") own a 1.4 acre parcel of property on Big Cedar Lake in the Town of West Bend in Washington County. The property has 200 feet of lake frontage and a 1600–square-foot house with a legal nonconforming setback of 26 feet from the ordinary high water mark of the lake. A public roadway bisects the lot along the side of the house opposite the lake, and the remainder of the lot on the other side of roadway is in a floodplain.

¶ 10. The petitioners purchased the property in 1996 and have used it as a summer home. They now wish to live in the house year-round, and would like to construct a ten-foot vertical addition to the structure consisting of two bedroom-bathroom suites and an office. In 1996, such an addition would have been permissible under the applicable shoreland zoning ordinance. However, in 2001 Washington County amended its ordinance to prohibit any expansion of any portion of an existing structure within 50 feet of the ordinary high-water mark of the lake. Washington Cty., Wis., Code § 23.13(3)(d). Accordingly, the petitioners need a variance to go ahead with their plans.

¶ 11. The Washington County Board of Adjustment considered the petitioners' variance application at a public hearing on October 22, 2001. The petitioners appeared and described their project in detail. A letter from the Wisconsin Department of Natural Resources (DNR) objecting to the variance was read into the record. A representative of the Washington County Department of Planning and Parks was also heard; he, too, opposed the variance. At the conclusion of the hearing, the Board denied the variance because the petitioners failed to show that they would have no reasonable use of their property without the variance.

¶ 12. The petitioners sought review via certiorari in Washington County Circuit Court. The Honorable David C. Resheske affirmed, concluding that under the "no reasonable use" standard of *Kenosha County,* the Board's denial of the variance must be upheld. The court of appeals affirmed on the same ground. *State ex rel. Ziervogel v. Washington County Bd. of Adjustment,* 2003 WI App 82, 263 Wis. 2d 321, 661 N.W.2d 884. We reverse.

## II. STANDARD OF REVIEW

¶ 13. A person aggrieved by the issuance or denial of a zoning variance may commence an action in circuit court seeking the remedy available by certiorari, as the petitioners did here. *See* Wis. Stat. § 59.694(10). A court on certiorari review must accord a presumption of correctness and validity to a board of adjustment's decision. *Snyder,* 74 Wis. 2d at 476. A reviewing court may not substitute its discretion for that of the board, the entity to which the legislature has committed these decisions. *Id.*

¶ 14. When no additional evidence is taken, statutory certiorari review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence. *Arndorfer v. Sauk County Bd. of Adjustment,* 162 Wis. 2d 246, 253, 469 N.W.2d 831 (1991). The second of these elements of certiorari review is implicated here: at issue is the appropriate legal standard for the determination of statutory "unnecessary hardship." This is a question of law that we review independently. *Outagamie County,* 244 Wis. 2d 613, ¶ 22.

## III. ANALYSIS

¶ 15. Counties are statutorily required to zone their shorelands by ordinance. Wis. Stat. § 59.692(1m) (1999–2000).[1] Washington County adopted a revised Shoreland/Wetland/Floodplain ordinance that became effective June 1, 2001. Washington Cty., Wis., Code ch. 23.

¶ 16. The zoning enabling statutes also empower county boards of adjustment to authorize variances from the terms of zoning ordinances in harmony with their general purpose and intent. Wis. Stat. § 59.694(1). Washington County has established a board of adjustment pursuant to the variance enabling statute. Washington County., Wis., Code § 23.15(e).

¶ 17. Variance procedure in zoning law serves several essential purposes: to prevent otherwise inflexible zoning codes from precipitating regulatory takings; to provide a procedure by which the public interest in zoning compliance can be balanced against the private interests of property owners in individual cases; and, most broadly, to allow a means of obtaining relief from the strict enforcement of zoning restrictions where individual injustices might occasionally occur. *Outagamie County,* 244 Wis. 2d 613, ¶¶ 44–47. Zoning variances "are designed to afford a protective device against individual hardships, to provide relief against unnecessary and unjust invasions of the right to private property, and to provide a flexibility of procedure necessary to the protection of constitutional rights." 8 Eugene McQuillin, *Municipal Corporations* § 25.160, at 590–91 (Rev. ed. 2000) (internal citations omitted). Thus,

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[i]t has been said that to preserve the validity of the zoning ordinance in its application to the community in general, the variance provision of the enabling act functions as an "escape valve," so that when regulations that apply to all are unnecessarily burdensome to a few because of certain unique circumstances a means of relief from the mandates of the ordinance is provided.

3 E.C. Yokley, *Zoning Law & Practice* § 20–1 (2002 revision), at 20–2.

¶ 18. Consistent with these principles, Wis. Stat. § 59.694(7) vests county boards of adjustment with the following authority to grant zoning variances:

To authorize upon appeal in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

Wis. Stat. § 59.694(7)(c).

¶ 19. The legislature has by this enactment delegated to local boards of adjustment substantial discretion to grant variances where the literal application of zoning regulations would result in unnecessary hardship not justified by the underlying purposes of the ordinance in question. The statute, however, does not define "unnecessary hardship," which is a prerequisite to the issuance of a variance. It has been left to courts to give content to the term.

¶ 20. The following judicial rules of unnecessary hardship are well-established: The hardship must be based on conditions unique to the property rather than considerations personal to the property owner. *Snyder,*

74 Wis. 2d at 479; *see also* 3 Kenneth H. Young, *Anderson's American Law of Zoning* §§ 20.35–20.40 (4th ed. 1996); 3 Edward H. Ziegler, Jr., *Rathkopf's Law of Zoning and Planning* § 58:18 (2003). The hardship cannot be self-created. *Snyder,* 74 Wis. 2d at 476; *see also Outagamie County,* 244 Wis. 2d 613, ¶ 24; 3 Ziegler, *supra* § 58:21; 3 Young, *supra* § 20.44–47. The board of adjustment is to evaluate the hardship in light of the purpose of the zoning restriction at issue. *Snyder,* 74 Wis. 2d at 473; *see also Outagamie County,* 244 Wis. 2d 613, ¶ 24; *Id.,* ¶ 74, (Crooks, J., concurring). A variance cannot be contrary to the public interest. *Arndorfer,* 162 Wis. 2d at 256; *see also Outagamie County,* 244 Wis. 2d 613, ¶ 24. The property owner bears the burden of proving unnecessary hardship. *Arndorfer,* 162 Wis. 2d at 253; *see also Outagamie County,* 244 Wis. 2d 613, ¶ 50. While these general principles help guide the board's discretion, they do not establish the meaning of the term "unnecessary hardship" or provide a legal standard for determining whether it has been proved.

¶ 21. By definition, all variances depart from the purpose of the zoning ordinance and implicate the public interest, because they permit something that is otherwise strictly prohibited. But they do so to varying degrees and levels of acceptability, depending on the type of variance requested and the nature of the zoning restriction in question. As such, courts have long recognized a distinction between use variances, which permit a landowner to put property to an otherwise prohibited use, and area variances, which provide exceptions from such physical requirements as setbacks, lot area, and height limits. *Snyder,* 74 Wis. 2d at 474–75; *see also Outagamie County,* 244 Wis. 2d 613, ¶¶ 34–36. The distinction has been described in this way:

A use variance is one that permits a use other than that prescribed by the zoning ordinance in a particular district. An area variance has no relationship to a change of use. It is primarily a grant to erect, alter, or use a structure for a permitted use in a manner other than that prescribed by the restrictions of a zoning ordinance.

3 Yokley, *supra* § 20–3, at 20–8-9; *see also* 3 Ziegler, *supra,* 58.4.

¶ 22. The law treats use and area variances differently because use and area zoning serve distinct purposes and affect property rights in distinct ways; also, use and area variances affect public and private interests differently. In the most general sense, the purpose of all zoning is to control land use and development in order to promote public health, safety, welfare, morals, and aesthetics. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 394–95 (1926). Shoreland zoning, at issue here, carries the additional general purposes of protecting the public's interest in navigable waters, including promoting safe and healthful water conditions, controlling pollution, and protecting fish and aquatic life and natural beauty. Wis. Stat. § 281.31(1). Within these general purposes, use zoning regulates fundamentally how property may be used, in order to promote uniformity of use within neighborhoods and regions. Area zoning, on the other hand, regulates density, setbacks, frontage, height, and other dimensional attributes, in order to promote uniformity of development, lot size, and building configuration and size.

¶ 23. Use and area variances thus threaten the integrity of zoning ordinances in qualitatively different ways, and generally to a different extent. Use variances

by their nature have the potential to bring about great changes in neighborhood character, but area variances usually do not have this effect. *Synder,* 74 Wis. 2d at 473; *see also Outagamie County,* 244 Wis. 2d 613, ¶¶ 36–38. While area variances provide an increment of relief (normally small) from a physical dimensional restriction such as building height, setback, and so forth, use variances permit wholesale deviation from the way in which land in the zone is used. Accordingly, the measure of unnecessary hardship for use and area variances is different; "in most states, the courts will approve an area variance upon a lesser showing by the applicant than is required to sustain a use variance."[2] 3 Young, *supra,* § 20:48, at 580. Until *Kenosha County,* Wisconsin followed this general rule, pursuant to this court's decision in *Snyder.*

¶ 24. *Snyder* linked the definition of "unnecessary hardship" in use variance cases to the goal of preventing zoning from rendering property useless, holding that "unnecessary hardship" in use variance cases is established only when, in the absence of a variance, no

---

[2] In some states, these differences are formalized in the variance statute itself. "[S]tatutes governing use and area variances fall into three categories: (1) those which allow use and nonuse (area) variances and which allow nonuse (area) variances to be granted upon a showing of practical difficulty; (2) those which allow use and nonuse (area) variances and require a showing of unnecessary hardship for both; and (3) those which do not allow use variances and require unnecessary hardship for the granting of nonuse (area) variances. . . . [Wisconsin's] statute falls into the second category, allowing both use and area variances upon a showing of 'unnecessary hardship.' " *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, ¶ 35, 244 Wis. 2d 613, 635, 628 N.W.2d 376; *see also* 3 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 58.4 (2003).

reasonable or feasible use can be made of the property. *Snyder*, 74 Wis. 2d at 474. However, because of the difference in purpose and effect of area zoning and area variances, *Snyder* established a different definition of "unnecessary hardship" for area variance cases:

> When considering an area variance, the question of whether unnecessary hardship or practical difficulty exists is best explained as "whether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome."

*Id.* at 474–75.[3]

¶ 25. *Snyder*'s less-stringent and more flexible definition of unnecessary hardship for area variances allows variance procedure to function as more than just a protection against unconstitutional takings of private property. It allows variance procedure to function as the regulatory "escape valve" it was meant to be: "The purpose of variances in the broadest sense is the rendering of justice in unique and individual cases of practical difficulties or unnecessary hardships arising from literal application of zoning ordinances." 8 Quillin, *supra* § 25.172, at 648.

---

[3] The term "practical difficulties" does not appear in our statute, which authorizes both use and area variances on a showing of "unnecessary hardship." Wis. Stat. § 59.694(7)(c). *Snyder* concluded that there was no real difference between the phrases "unnecessary hardship" and "practical difficulties" in the secondary authorities, but held that unnecessary hardship in use and area variance cases must be governed by distinct standards because use and area variances produce different effects. *Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 474–75, 247 N.W.2d 98 (1976).

¶ 26. *Snyder*'s dual approach to use and area variances furthers the purpose of use and area zoning, allows for individualized balancing of public and private interests, and is consistent with the approach of most courts around the country:

> The prime justification for requiring less of an applicant for an area variance than is required in the case of a use variance is that the former does not affect the use of the land. An area variance is thought not to threaten adjacent land with the establishment of an incompatible use, or to hazard the maintenance of a use which will change the essential character of a neighborhood. Such a variance has some capacity to impose an adverse effect on adjacent land, and standards must be imposed to insure the protection of neighboring property, but in the case of area variances, it is assumed by most courts that adequate protection of the neighborhood can be effected without the imposition of the stringent limitations which have been developed in the use variance cases.

3 Young, *supra* § 20.48, at 581 (internal citations omitted). *Snyder* remained in place for more than two decades, until *Kenosha County* was decided in 1998.

¶ 27. *Kenosha County* blurred the distinction between use and area variances, by adopting the "no reasonable use of the property" test from use variance analysis for area variance cases. *Kenosha County,* 218 Wis. 2d at 398, 413–14. This has had the effect of severely curtailing the discretion vested by the legislature in boards of adjustment. *See Outagamie County,* 244 Wis. 2d 613, ¶ 32; *State ex rel. Spinner v. Kenosha County Bd. of Adjustment,* 223 Wis. 2d 99, 110, 588 N.W.2d 662 (Ct. App. 1998)(Nettesheim, J., concurring). It also had the effect of displacing *Snyder sub silentio.* By operation of the now-uniform "no reasonable use"

standard, local zoning boards cannot even begin to evaluate the individual circumstances of an area variance application when the property in question is capable of any reasonable use without the variance; a property owner with a "reasonable use" is disqualified from the start.

¶ 28. Application of the "no reasonable use" standard to area variances overwhelms all other considerations in the analysis, rendering irrelevant any inquiry into the uniqueness of the property, the purpose of the ordinance, and the effect of a variance on the public interest. As Justice Crooks has noted:

> Consideration of a variance request as it relates to the purpose of the zoning ordinance, along with review of the specific restriction at issue, must necessarily take into account the differences resulting from the granting of an area or use variance. Indeed, "because area variances do not involve great changes in the character of neighborhoods as do use variances," the purpose of the zoning ordinance may not be so likely undermined by an area variance as it might be by a use variance.

*Outagamie County*, 244 Wis. 2d 613, ¶ 74 (Crooks, J., concurring) (quoting *Snyder*, 74 Wis. 2d at 473.)

¶ 29. For the statutory discretionary authority to be meaningful, boards of adjustment must have the opportunity to distinguish between hardships that are unnecessary in light of unique conditions of the property and the purpose of the ordinance, and hardships that do not warrant relief, either because they are inconsequential or not unique or because a variance would unduly undermine the purpose of the ordinance or the public interest. Boards of adjustment must "have some very real flexibility in granting variances." *Id.* (Crooks, J., concurring). Under the "no reasonable use"

567

standard, however, boards of adjustment are effectively prohibited from considering the graduated nature of intrusions upon the strict letter of area restrictions. The "no reasonable use" standard, therefore, leaves boards of adjustment with almost no flexibility and empties the concept of "discretion" of any real meaning.

¶ 30. *Kenosha County*'s adoption of the "no reasonable use" standard for area variances generally precludes any property owner currently using his property from ever getting a variance, regardless of the merits of the application or the type, size, and nature of the variance requested. This "unreasonably prevent[s] private property owners from making even highly beneficial, completely legal improvements to their property," if doing so requires a variance to legalize even the slightest nonconformity. *Id.,* ¶¶ 42, 47. Almost all variance applicants—certainly all applicants who are putting their property to some use at the time of application—will flunk the "no reasonable use" test, divesting the board of any real discretion.[4] Universal

---

[4] The court of appeals identified some of these anomalies almost immediately after the decision in *State v. Kenosha County Bd. of Adjustment,* 218 Wis. 2d 396, 577 N.W.2d 813 (1998), *see State ex rel. Spinner v. Kenosha County Bd. of Adjustment,* 223 Wis. 2d 99, 110, 588 N.W.2d 662 (Ct. App. 1998)(Nettesheim, J., concurring)("[t]he real effect of the [*Kenosha County*] decision is to significantly curtail a board of adjustment's discretion in such matters"), but has considered itself bound by the new "no reasonable use" standard for area variances. *See, State ex rel. Ziervogel v. Washington County Bd. of Adjustment,* 2003 WI App 82, ¶¶ 21–25, 263 Wis. 2d 321, 661 N.W.2d 884. *See also,* for illustrative purposes only, the following unpublished, nonprecedential opinions: *State v. Waushara County Bd. of Adjustment,* No. 02–2400, unpublished order (WI App May 7, 2003); *Voss v. Waushara County Bd. of Adjustment,* 2003 WI App 111, 264 Wis. 2d 893, 664 N.W.2d 126 (unpublished

application of the "no reasonable use" definition of unnecessary hardship to all variances has drained the variance statute of its meaning and effect.[5]

¶ 31. In *Outagamie County* we reconsidered *Kenosha County*'s adoption of the "no reasonable use" standard for measuring unnecessary hardship in area variance cases, but divided on whether it should be overruled (three justices), maintained but not applied to defeat the variance in the case (two justices in concurrence), or maintained and applied to defeat the variance (two justices in dissent). *Id.*, ¶ 5. We now conclude that *Kenosha County*'s "no reasonable use of the property" standard for unnecessary hardship no longer applies in area variance cases, and the *Snyder* definition of unnecessary hardship in area variance cases is reaffirmed.

¶ 32. Applying the "no reasonable use" standard to area variances is inconsistent with the purpose of area zoning, fails to recognize the lesser effect of area variances on the public interest, and very nearly extin-

table decision); *State v. Outagamie County Bd. of Adjustment*, 222 Wis. 2d 220, 587 N.W.2d 215 (Ct. App. 1998) (unpublished table decision).

[5] "Unnecessary hardship" in zoning variance cases "is *neither* the same nor as demanding as a takings analysis." 3 E.C. Yokley, *Zoning Law and Practice* § 20-6, at 20–25 (2002 revision)(emphasis in original). The United States Supreme Court has held that a categorical regulatory taking occurs when a zoning regulation deprives property of all economically beneficial or productive use. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). The "no reasonable use" test arguably accomplishes the bare constitutional minimum of preventing regulatory takings. But requiring all variance applicants to show "no reasonable use" of the property without a variance frustrates rather than furthers the broader purposes of variance procedure.

569

guishes the statutory discretion of local boards of adjustment. Continuing to condition area variances upon a showing of "no reasonable use of the property" makes variance procedure unworkable and unfairly forecloses almost all property owners from the opportunity to demonstrate hardship.

¶ 33. We therefore reinstate *Snyder*'s formulation of unnecessary hardship for area variance cases: " '[w]hether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.' " *Snyder,* 74 Wis. 2d at 475 (quoting 2 Rathkopf, *The Law of Zoning and Planning* § 45–28 (3d ed. 1972)). *Snyder* also emphasized that variance requests are always evaluated in light of the purpose of the zoning ordinance and the public interests at stake. *Id.* at 473. Accordingly, whether the *Snyder* standard is met in individual cases depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, and the effect of a variance on the neighborhood and larger public interest. The established requirements that the hardship be unique to the property and not self-created are maintained, and the burden of proving unnecessary hardship remains on the property owner. *Id.* at 476–79; *see also Outagamie County,* 244 Wis. 2d 613, ¶¶ 24, 50.

¶ 34. It is axiomatic that all zoning restrictions impose some burdensome effect on property and all variances run contrary to the purpose of the ordinance to some degree. The inquiry should focus on how they do so, and to what extent, in light of the circumstances

of each individual case. The board must determine whether a hardship unique to the property has been demonstrated and whether the relief requested is consistent with the public interest such that the variance should be granted, or whether a variance would subvert the purpose of the zoning restriction to such an extent that it must be denied.

¶ 35. We note in this case that the Washington County zoning ordinance incorporates *Kenosha County*'s "no reasonable use of the property" definition of statutory unnecessary hardship, which we have now determined is no longer applicable. Washington Cty., Wis., Code § 23.18(78). A local ordinance defining "unnecessary hardship" as "no reasonable use" has the same effect as a judicial opinion adopting the same definition, that is, it virtually eliminates the statutory discretion of the board of adjustment.

¶ 36. The zoning enabling statute authorizes the availability of variances upon a showing of unnecessary hardship, and explicitly commits to boards of adjustment the discretion to make variance decisions. Wis. Stat. § 59.694(7)(c). The "no reasonable use" definition in the Washington County ordinance, to the extent it is applicable to area variance requests, conflicts with the statutory grant of authority and operates to eliminate what the statute allows.

¶ 37. Counties have statutory home rule authority pursuant to Wis. Stat. § 59.03, but may not exercise that authority in a way that conflicts with legislative enactments of statewide concern that uniformly affect all counties. Wis. Stat. § 59.03(1); *Mommsen v. Schueller*, 228 Wis. 2d 627, 635–36, 599 N.W.2d 21 (Ct. App. 1999). This is consistent with the general rule of

limitation on the constitutionally-based home rule authority of other local units of government. *See* Wis. Const. art. XI, § 3(1); *De Rosso Landfill Company, Inc. v. City of Oak Creek,* 200 Wis. 2d 642, 657, 547 N.W.2d 770 (1996); *Anchor Savings & Loan Association v. Madison Equal Opportunities Commission,* 120 Wis. 2d 391, 395–97, 355 N.W.2d 234 (1984). While local units of government may adopt "ordinances which, while addressed to local issues, concomitantly regulate matters of statewide concern," this authority is limited to ordinances that complement rather than conflict with the state legislation. *DeRosso,* 200 Wis. 2d at 651–52.

¶ 38. Accordingly, local home rule regulations in areas where the legislature has adopted uniformly applicable statutes on matters of statewide concern are subjected to the following analysis for validity: 1) has the legislature withdrawn the power of municipalities to act; 2) does the local ordinance logically conflict with the state legislation; 3) does the ordinance defeat the purpose of the state legislation; or 4) does the ordinance go against the spirit of the state legislation? *DeRosso,* 200 Wis. 2d at 651–52 (citing *Anchor,* 120 Wis. 2d at 397); *Mommsen,* 228 Wis. 2d at 636–37. If "any one of these tests [is] met, the municipal ordinance is void." *DeRosso,* 200 Wis. 2d at 652.

¶ 39. For the reasons we have noted, the Washington County ordinance adopting the "no reasonable use of the property" definition for unnecessary hardship in area variance cases logically conflicts with the statutory grant of discretion to local boards of adjustment pursuant to Wis. Stat. § 59.694(7)(c). It also operates to defeat the purpose of the statute, for the reasons we have discussed, and contradicts the spirit of the statutory grant of discretion to local boards of adjustment.

¶ 40. In *Outagamie County* we invalidated a DNR rule that prohibited a certain type of variance because it conflicted with the statutory grant of authority to boards of adjustment. *Outagamie County,* 244 Wis. 2d 613, ¶¶ 59–60. We also concluded that two county ordinance provisions—one which purported to permit certain variances and another that appeared to prohibit them—were irreconcilable and therefore unenforceable. *Id.,* ¶ 66. We reach a similar conclusion here. The ordinance's "no reasonable use" requirement for unnecessary hardship in area variance cases, which mirrors *Kenosha County*'s "no reasonable use" standard for area variances, conflicts with the statute and is therefore unenforceable as applied to area variances.

¶ 41. The petitioners' variance application was denied, and the denial upheld on certiorari review and appeal, for the sole reason that *Kenosha County*'s strict "no reasonable use of the property" standard for determining unnecessary hardship had not been met. We have now concluded that the "no reasonable use" standard is no longer applicable in area variance cases and reaffirmed the *Snyder* definition of unnecessary hardship for area variance cases: whether compliance with area zoning restrictions "would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome." *Snyder,* 74 Wis. 2d at 475.

¶ 42. Whether this standard is met in this case will depend upon the board of adjustment's consideration of the purpose of the zoning restriction in question (including the important public purposes of shoreland zoning generally), the effect of the restriction on the property, and the effect of a variance on the neighborhood and the larger public interest. In addition, the

petitioners must demonstrate that the hardship is based upon conditions unique to the property and is not self-created. Accordingly, we reverse and remand for proceedings consistent with this opinion.

*By the Court.*—The decision of the Court of Appeals is reversed and the cause remanded for further proceedings consistent with this opinion.

¶ 43. SHIRLEY S. ABRAHAMSON, C.J., and ANN WALSH BRADLEY, J., did not participate.