ANN WALSH BRADLEY, J.
¶ 48. (dissenting.)
Rather than addressing the session laws which provide a clear answer to our inquiry and dictate protection of the employees' benefits, the majority shifts the focus of its analysis to language in the Milwaukee County General Ordinance. It is only by repeatedly ignoring the language of the governing session laws that the majority is able to conclude that the County may reduce the pension multiplier, thereby dealing a blow to the rights of the employees.
¶ 49. I conclude instead, as did a unanimous court of appeals, that the session laws mean what they say: employees have a vested right to their benefits when they accept employment with the County and the County is not permitted to diminish or impair those benefits. As such, the County was without authority to pass an ordinance reducing Stoker's pension multiplier. Accordingly, I respectfully dissent.
I
¶ 50. The Milwaukee County Employee Retirement System [MCERS] was created by the legislature *377 in chapter 138 of the Laws of 1945. That session law provided that employees shall have a benefit contract and vested rights to their benefits at the time each employee commences membership:
Every future entrant who shall become a member of [MCERS] after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in the law under which the retirement system was established as such law shall have been amended and be in effect at the date of commencement of his membership.
Laws of 1945, Ch. 138 (emphasis added). The legislature did not refer to an employee earning or accruing benefits through services rendered. Rather, the legislature provided that rights to benefits "vested" at the "date of commencement of [an employee's] membership."[1] It is hard to imagine how much clearer the legislature could have been.
¶ 51. Not surprisingly, Wisconsin courts have previously concluded that language similar to that used in chapter 138 of the Laws of 1945 created a vested right to benefits at the time of hire. In Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), the court considered substantially similar laws relating to police officers' retirement benefits. The session law at issue provided that:
Every such member. .. shall thereby have a benefit contract in said retirement system of which he is such *378 member or beneficiary as of the effective date of this act.... [E]ach member and beneficiary having such a [retirement system] benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without [the officer's] consent... . Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits ....
Laws of 1947, ch. 441, § 30(2). After considering this language, the court determined that the retirement benefits at issue vested at the time officers became employees.
¶ 52. The Welter court reasoned that the language of the session laws "[is] not ambiguous; [its] meaning is plain." Welter, 214 Wis. 2d at 491. "Under [the laws at issue], retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer unless the officer agrees to a change." Id. The court rejected the city's argument that the rights vested at some later date, stating that "[t]his argument, however, ignores the legislative command that the critical date is not that of the duty-related disability but the date the officer becomes a member of the retirement system— the date he or she was first employed by the City as a police officer." Id. at 494-95. See also Rehrauer v. City of Milwaukee, 2001 WI App 151, ¶¶ 11-13, 246 Wis. 2d 863, 631 N.W.2d 644 (following Welter's conclusion that the officers' benefits vested at the date of hire).
¶ 53. The majority attempts to avoid the plain language of the session laws and the cases interpreting similar language by shifting its focus to the language of the Milwaukee County General Ordinance. Majority *379 op., ¶ 30. It asserts that this is the proper approach because the session laws do not "explain whether the 2% multiplier is a vested right with respect to future service" and thus, the majority implies that the Ordinance does. Id., ¶ 39. Pointing to the Ordinance's statement that 0.5% of the multiplier applies to "service rendered," the majority concludes that this means "the multiplier accrues over time." Id., ¶ 30.[2] It then states that Welter is inapposite because it relied on the language of the session laws and not an ordinance. Id., ¶ 42.
¶ 54. Contrary to the majority's implications, the Ordinance does not directly address whether the multiplier creates vested rights with respect to future service. The majority's strained reasoning on this point conflicts with the common definition of the word "accrue." The word "accrue" generally means "to accumulate over time." The American Heritage Dictionary of the English Language 12 (3d ed. 1992); see also Black's Law Dictionary 21 (7th ed. 1999) (defining accrue as "[t]o accumulate periodically").
¶ 55. Nothing in the Ordinance indicates that the multiplier grows over time. Under the Ordinance, an employee "shall receive an amount equal to one and one-half (IV2) percent of his final average salary multiplied by the number of his years of service rendered." MCGO § 201.24(5.1)(1).
¶ 56. The Ordinance further provides that "all pension service credit earned on and after January 1, 2001, shall be credited in an amount equal to an additional one-half (0.5) percent of the member's final *380 average salary." MCGO § 201.24(5.15). As indicated by the language of the Ordinance, the multiplier does not grow or accumulate in proportion to the years of service rendered. It is the number of pension service credits that increases over time, not the multiplier. The multiplier itself does not "accrue."
¶ 57. The majority's refusal to acknowledge the words of the governing session laws is evident in its reliance on Champine, Pasko, and Valeo to support its conclusion that the multiplier accrues as service is rendered. I recognize that each of those cases determined that under the governing law or contract being interpreted, the benefit at issue vested as service was rendered. However, each of those cases also acknowledged that legislation or a contract could include a different vesting trigger, such as the commencement of employment. See Champine v. Milwaukee County, 2005 WI App 75, ¶ 19, 280 Wis. 2d 603, 696 N.W.2d 245; Pasko v. Milwaukee County, 2013 WI App 91, ¶ 12, 349 Wis. 2d 444, 836 N.W.2d 461; Valeo v. J. I. Case Co., 18 Wis. 2d 578, 584, 119 N.W.2d 384 (1963).
¶ 58. In this case, clear language in a governing session law creates a vesting trigger different from the trigger found in those cases. Chapter 138 of the Laws of 1945 states that employees "shall have a similar benefit contract and vested right in the annuities and all other benefits in the amounts and on the terms and conditions ... at the date of commencement of his membership." In other words, upon acceptance of employment, employees gain a vested right to benefits on the terms and conditions of the contract.[3] Because one of the *381 terms and conditions of the pension benefit was that it would be calculated using a 2% multiplier, there is a vested right to that multiplier.
¶ 59. The majority further attempts to distance this case from the governing session laws by asserting that chapter 138 of the Laws of 1945 does not apply because that chapter applies only to benefits in existence when a person's county employment began and that the multiplier when Stoker began employment was 1.5%, lower than the 1.6% at issue here. Majority op., ¶ 42 n.17. Again, the majority's narrow focus has led it astray.
¶ 60. Although chapter 138 of the Laws of 1945 could have initially been read as the majority posits, a 1957 amendment to that chapter clarifies that an employee has vested rights to increases in benefits, not just the benefits available at the start of employment. Specifically, Chapter 326 of the Laws of 1957 amended the language to read:
[E]ach member and beneficiary having such a benefit contract shall have a vested right to all benefits stated by the act at the time his membership is effective and to all increases in benefits covered by amendments subsequent to the date his membership is effective and *382 they shall not be diminished or impaired by subsequent legislation on or by any other means without his consent.
Ch. 326, Laws 1957, § 6 (emphasis added).
¶ 61. Nearly identical language was interpreted in Rehrauer, 246 Wis. 2d 863. In that case the ordinance at issue provided that firefighters have a "vested right in the . . . benefits in the amounts and on the terms and conditions and in all other respects as provided in the law ... in effect at the date of commencement of his membership and as subsequently amended." Id., ¶ 16 (quoting Milwaukee City Charter § 36-13-2-c). Based on the language of the ordinance and the governing statutes, the principles set forth in Welter, and the importance of the attraction and retention of public employees, the court concluded that "firefighters gained vested rights in the highest level of duty disability benefits that came to be contractually established during their years of active duty." Id., ¶ 20. Given that the language in this case is nearly identical to that at issue in Rehrauer, there is little justification for interpreting it differently.
II
¶ 62. In contrast to the majority's interpretation, I conclude that the language of the session law governs: employees "shall have a vested right to all benefits stated by the act at the time his membership is effective and to all increases in benefits covered by amendments subsequent to the date his membership is effective." Ch. 326, Laws of 1957, § 6. This language is unambiguous and is not open to alternative interpretations. See Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶ 145, 358 Wis. 2d 1, 851 N.W.2d 337 (concluding that similar *383 provisions in Milwaukee's Charter "unmistakably evince the clear intention of the Common Council to create a 'vested and contractual right to the [pension] benefits in the amount and on the terms and conditions' as provided in [the Charter]").
¶ 63. Here, upon accepting employment with the County in 1982, Stoker entered into a contract which provided her with a vested right to a 1.5% pension multiplier. See MCGO § 201.24(5.1) (1981). During her employment, that multiplier was increased to 2%. See MCGO § 201.24(5.15)(1) (enacted 2000). Under chapter 326 of the Laws of 1957, Stoker had a vested right to the increase as well.
¶ 64. Once her rights to the multiplier vested, the County was unable to reduce it. The legislature's restrictions on the County's home rule authority with respect to altering employee benefits are clear. It instructed that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change." Ch. 405, Laws 1965. An ordinance that conflicts with the authority granted by the session laws is void. See State ex rel. Ziervogel v. Wash. Cnty. Bd. of Adjustment, 2004 WI 23, ¶ 38, 269 Wis. 2d 549, 676 N.W.2d 401. Here, the County's amendment to the Ordinance would operate to reduce Stoker's pension multiplier to 1.6%, thereby conflicting with the Legislature's mandate that employee rights and benefits not be diminished. Accordingly, the amendment to the Ordinance is void.
¶ 65. In sum, the majority's attempt to avoid the language of the governing session laws and shift the focus to the language in the Ordinance is unpersuasive. *384 It turns a blind eye to the clear language of the session laws which must trump the amendment to the County Ordinance.
¶ 66. Although the County offered employment to individuals with the promise that a certain pension benefit formula would accompany such employment, the majority erroneously concludes that the County has unfettered discretion to prospectively reduce it. As a result, an employee who accepted the offer has no contractual rights to enforce that formula. Because I conclude that employees have a vested right to the formula containing the multiplier and that the County was without authority to pass an ordinance reducing that multiplier, I would affirm the unanimous court of appeals' decision.[4]
¶ 67. For the reasons set forth above, I respectfully dissent.
¶ 68. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.

 "Vested" is defined as "[t]hat has become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." Black's Law Dictionary 1557 (7th ed. 1999).

 It is unclear why the majority focuses on the language in the Ordinance creating the additional 0.5% multiplier and not the language regarding the base 1.5% multiplier, MCGO § 201.24(5.1)(1). The two provisions have different language.

 Citing Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766, the majority alludes to the argument that the session law was a unilateral contract offer that the county could modify until an employee became entitled to the benefits *381 by accepting the offer. Majority op., ¶¶ 29, 46. It is understandable that the majority does not attempt to directly embrace the unilateral contract argument. Neither the session law nor the Ordinance creates eligibility requirements that employees need to meet before being entitled to the multiplier. As illustrated above, to the extent the session law can be viewed as a unilateral contract offer, the only action an employee need take to accept the offer, and thereby create a binding contract, is to accept employment. Similarly, under the Ordinance, an employee is entitled to the multiplier regardless of how many years of service the employee has rendered.

 The same day the court heard argument on this case, we also heard argument on another case involving when Milwaukee County employees' benefits become vested. The decision in that case is still pending. Efforts should be made to make the two opinions consistent. The core function of courts is, of course, clear, consistent, and reliable application of the law.
Because of the court's new procedure for opinion preparation and mandate, I cannot comment on the other decision at this time given that I want this dissent to be mandated at the same time as the majority opinion. See State v. Gonzalez, 2014 WI 124, ¶ 30, 359 Wis. 2d 1, 856 N.W.2d 580 (Abrahamson, C.J., concurring) (setting forth the new procedure).